o

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JANICE LEE BONDS,                )   Case No. SACV 10-1790-DTB
                                 )
              Plaintiff,         )
                                 )
       vs.                       )   ORDER REVERSING DECISION OF
                                 )   COMMISSIONER AND REMANDING
                                 )   FOR FURTHER ADMINISTRATIVE
MICHAEL J. ASTRUE,               )   PROCEEDINGS
Commissioner of Social Security, )
                                 )
              Defendant.         )
                                 )

       Plaintiff filed a Complaint ("Complaint") on November 22, 2010, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Income.  In accordance with the Magistrate Judge's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on July 25, 2011.  Thus, this matter now is ready for decision.[1]

/ / /

/ / /

---

[1]       As the parties were advised in the Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

**DISPUTED ISSUES**

1.      Whether the Administrative Law Judge ("ALJ") properly considered the medical expert's testimony concerning plaintiff's deficiencies in maintaining persistence and pace.  (Jt. Stip. 3-12.)

2.      Whether the ALJ properly evaluated the opinion of plaintiff's treating physician.  (Jt. Stip. 12-19.)

3.      Whether the ALJ properly assessed plaintiff's credibility.  (Jt. Stip. 19-26.)

**DISCUSSION**

**I.      The ALJ properly evaluated the treating medical opinion.**

Plaintiff claims in Disputed Issue Two that the ALJ's decision is not supported by substantial evidence because the ALJ improperly rejected the opinion of her treating physician, Dr. Imelda Alonso, as set out in a Mental Disorder Questionnaire Form she completed in March 2009.  (Jt. Stip. 12-14.)

In evaluating medical opinions, the Ninth Circuit distinguishes among three types of physicians: (1) Treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine nor treat).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  Id.  Although a treating physician's opinion is entitled to special weight, McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989), "[t]he treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given to a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  See 20

2

C.F.R. §§ 404.1527 (d)(2) and 416.927(d)(2).   When a treating or examining physician's opinion is not contradicted by another physician, it may only be rejected for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  Where, as in this case, the treating physician's opinion is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  Id. at 830-31; see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

Here, the record indicates that plaintiff began using crack cocaine when she was "pretty young," or about 17 years old.  (AR 32, 274.)  Plaintiff testified at the hearing that she stopped using drugs in November 2008 (when she was 43 years old). (AR 27.)

In the interim, in February 2008, plaintiff began treatment for major depression. (AR 303-04.)  In April 2008, Dr. Alonso examined plaintiff for the first time and noted that she had a "partial response" to psychiatric medication.  (AR 273, 309.)  In July 2008, Dr. Alonso completed a Mental Disorder Questionnaire Form that stated, among other things, that plaintiff is "unable to work or adapt to stresses common to the work environment" due to increasing depression, paranoia, and auditory hallucinations.[2]  (AR 272.)  In March 2009, Dr. Alonso completed another Mental

---

[2]      The ALJ determined that Dr. Alonso's July 2008 Questionnaire served as evidence that plaintiff's substance abuse disorder met the requirements of Listings 12.02 (Organic Mental Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders) and, therefore, plaintiff was disabled.  (AR 15-16.)

Where the record indicates, however, that a claimant has a history of drug or alcohol addiction ("DAA"), "a finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) (quoting Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).)   A claimant is not eligible to receive disability benefits if DAA is a "contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a).  If the
(continued...)

Disorder Questionnaire Form that identically stated, among other things, that plaintiff is "unable to work or adapt to stresses common to the work environment" because of increased depression, paranoia, and auditory hallucinations. (AR 346-49.)

The ALJ rejected Dr. Alonso's March 2009 Questionnaire as evidence that plaintiff continued to be disabled in the absence of drug abuse. (AR 18.) The ALJ's determination was supported by specific and legitimate reasons supported by substantial evidence in the record.

First, the ALJ noted that Dr. Alonso's March 2009 Questionnaire was "virtually identical" to her July 2008 Questionnaire. (AR 18; compare AR 269-73 with AR 346-49.)[3] The ALJ properly called into question the evidentiary value of the March 2009 Questionnaire on this basis, given that plaintiff testified that she stopped using drugs in November 2008. (AR 27.)

Moreover, the ALJ found that Dr. Alonso's opinion was inconsistent with her treatment notes, which indicated that plaintiff reported improved symptoms soon after starting mental health treatment, and that her symptoms worsened because she ran out of medication. (AR 18.) The record substantiates the ALJ's determination (AR 309,

[2](...continued)
Commissioner finds that the claimant is disabled and has medical evidence of the claimant's DAA, "the ALJ must conduct a drug and alcoholism analysis ('DAA Analysis') by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." Parra, 481 F.3d at 747; see also 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); Bustamante, 262 F.3d at 954; Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001); Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).

If the remaining limitations would still be disabling, then drug addiction or alcoholism is not a contributing factor material to his disability. Parra, 481 F.3d at 747. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. Id. In this case, the ALJ made the latter finding. (AR 16.)

[3]     The March 2009 Questionnaire has one missing page that is no longer available, despite an inquiry to Dr. Alonso. (AR 1; Jt. Stip. 15 n. 2.)

4

324, 326), and Dr. Alonso's opinion was properly rejected on this basis.  See Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (ALJ properly rejected treating psychologist's opinion that claimant was unemployable where record indicated "improved functioning at work"); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating medical opinion that is inconsistent with the physician's own treatment notes); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (same).

Finally, the ALJ found that Dr. Alonso's opinion was inconsistent with the rest of the medical evidence, specifically the opinions of the examining psychiatrist, the state agency psychiatrist, and the testifying medical expert.  (AR 18-19.)  In May 2008, Dr. Romualdo Rodriguez conducted a psychiatric consultative evaluation and concluded that, as long as plaintiff remained sober and properly treated, "she could easily recover from her symptoms within twelve months."  (AR 247.)  Based on Dr. Rodriguez's evaluation, the state agency psychiatrist, Dr. H.M. Skopec, completed a Psychiatric Review Technique Form stating that plaintiff's mental impairments were not severe.  (AR 250.)  Consistent with this evidence, the medical expert, Dr. Joseph Malancharuvil, testified at the hearing that if plaintiff were sober, she would be capable, in pertinent part, of performing moderately complex tasks involving four to five steps of instruction in a repetitive setting and object-oriented work.  (AR 29.)  These opinions constituted substantial evidence supporting the ALJ's rejection of Dr. Alonso's opinion.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (where the opinion of a non-treating physician is based on independent clinical findings that differ from those of a treating physician, the opinion may constitute substantial evidence); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.")

/ / /

1    Thus, Disputed Issue Two does not warrant reversal of the Commissioner's

2    decision.

3

4    **II.    The ALJ properly evaluated plaintiff's credibility.**

5         Plaintiff claims in Disputed Issue Three that the ALJ's adverse credibility

6    determination was not supported by substantial evidence.  (Jt. Stip. 19-26.)

7         Where the claimant has produced objective medical evidence of an impairment

8    or impairments which could reasonably be expected to produce some degree of pain

9    and/or other symptoms, and the record is devoid of any affirmative evidence of

10   malingering, the ALJ may reject the claimant's testimony regarding the severity of

11   the claimant's pain and/or other symptoms only if the ALJ makes specific findings

12   stating clear and convincing reasons for doing so.  See Smolen v. Chater, 80 F.3d

13   1273, 1281-82 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);

14   Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); see also

15   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The ALJ "must

16   identify what testimony is not credible and what evidence undermines the claimant's

17   complaints."  Lester, 81 F.3d at 834; see also Dodrill, 12 F.3d at 918.  Further, a

18   credibility finding must be "sufficiently specific to permit the court to conclude that

19   the ALJ did not arbitrarily discredit [the] claimant's testimony."  Thomas, 278 F.3d

20   at 958.  Factors that may be considered include: (1) The claimant's reputation for

21   truthfulness; (2) inconsistencies in testimony or between testimony and conduct; (3)

22   the claimant's daily activities; (4) an unexplained, or inadequately explained, failure

23   to seek treatment or follow a prescribed course of treatment; and (5) testimony from

24   physicians concerning the nature, severity, and effect of the symptoms of which the

25   claimant complains.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also

26   Thomas, 278 F.3d at 958-59.

27        During the administrative hearing, plaintiff testified that she began using crack

28   cocaine when she was "pretty young" (AR 32) and stopped in November 2008 (when

6

1  she was 43 years old).  (AR 27.)  Plaintiff also testified that she no longer works as

2  a nurse's assistant because of depression, that she has suicidal and paranoid thoughts

3  and hears voices, that she cannot finish tasks, that she has trouble sleeping, that she

4  gets distracted easily, that she has trouble remembering things, that she often stays

5  in bed all day, and that she was raped but did not report it.  (AR 32-35.)

6      The ALJ determined that plaintiff's testimony was "not fully credible" due to

7  plaintiff's inconsistencies with regard to three issues.  (AR 19.)  The ALJ's

8  determination was supported by clear and convincing reasons.

9      First, the ALJ found that plaintiff made inconsistent statements regarding her

10 education: At different times, plaintiff stated that she completed the twelfth grade

11 (AR 185) and dropped out of school in the ninth grade. (AR 244.)  Although plaintiff

12 argues that this inconsistency has "no bearing" on plaintiff's claim for disability and

13 is "trivial at best" (Jt. Stip. 20), it is well settled that an ALJ may employ "ordinary

14 techniques of credibility evaluation," including the claimant's reputation for

15 truthfulness and inconsistent statements on various matters.  See Tommasetti, 533

16 F.3d at 1039; Thomas, 278 F.3d at 958-59.  It follows that the ALJ may permissibly

17 infer from plaintiff's inconsistent statements about her educational history that

18 plaintiff is not fully credible about other issues, such as her subjective symptoms.

19 See, e.g., Farmer v. Astrue, 2011 WL 1434663 at *5 (D. Kan. Apr. 14, 2011) (ALJ

20 properly made adverse credibility finding based on claimant's inconsistent statements

21 regarding her education level); Taylor v. Astrue, 2010 WL 2933794 at *6 (S.D. Ga.

22 May 13, 2010) (same).   Such a conclusion is further warranted when this

23 inconsistency is considered together with other inconsistencies below.

24     Second, the ALJ found that plaintiff made inconsistent statements regarding

25 her history of drug abuse: During the administrative hearing, plaintiff testified that

26 she last used cocaine in November 2008 (AR 27), but in December 2008, during a

27 medication visit, she denied any drinking or street drug use.  (AR 325.)  The ALJ

28 properly found that this inconsistency rendered plaintiff less than fully credible.  See

7

1  Thomas, 278 F.3d at 959 (ALJ permissibly inferred from claimant's conflicting

2  information about her drug and alcohol usage that "this lack of candor carries over

3  to her description of physical pain").

4         Third, the ALJ found that plaintiff made inconsistent statements regarding her

5  level of activity: Although plaintiff testified at the hearing that she often spends all

6  day in bed (AR 35), she earlier told an examining psychiatrist that she dresses and

7  bathes herself, runs errands, goes to the store, cooks and makes snacks, and

8  participates in household chores.  (AR 244.)   The ALJ properly accounted for this

9  inconsistency in the adverse credibility determination.  See Moncada v. Chater, 60

10 F.3d 521, 524 (9th Cir. 1995) (ALJ properly discredited claimant's testimony where

11 claimant's testimony about daily living activities was much more limited than those

12 reported prior to testimony).

13        Thus, Disputed Issue Three does not warrant reversal of the Commissioner's

14 decision.

15

16 **III.    Reversal is warranted based on the medical expert's testimony regarding**

17         **plaintiff's limitation in persistence and pace.**

18        Plaintiff claims in Disputed Issue One that a finding of disability is warranted

19 in light of the testimony of the medical expert, Dr. Malancharuvil, and the testimony

20 of the vocational expert.  (Jt. Stip. 3-6.)   Specifically, as noted with regard to

21 Disputed Issue Two, the ALJ accepted the opinion of Dr. Malancharuvil, who

22 testified at the hearing that if plaintiff were sober, she would be capable, in pertinent

23 part, of performing moderately complex tasks involving four to five steps of

24 instruction in a repetitive setting and object-oriented work.  (AR 29.)   Dr.

25 Malancharuvil also testified, however, that even if plaintiff were sober, she would

26 have a "mild to moderate" limitation in cognitive functioning, persistence, and pace.

27 (AR 28.)  Dr. Malancharuvil later affirmed that a "mild to moderate" limitation in

28 persistence and pace represented a 15 to 20 percent reduction in efficiency and

8

behavior.  (AR 30.)  Later in the hearing, the vocational expert testified that if a person had a 15 to 20 percent reduction in persistence and pace, she would not be able to sustain employment doing object-oriented work.  (AR 37-38.)

In spite of this evidence, the ALJ found that if plaintiff stopped her substance abuse, she would have the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: Moderately complex tasks in a habituated work setting, no hazardous or fast moving machinery, no safety related work requiring hypervigilance, and object-oriented work.  (AR 17.) As for Dr. Malancharuvil's specific testimony that plaintiff had a 15 to 20 percent reduction in persistence and pace, the ALJ explained that this limitation was "accounted for" in the RFC determination.  (AR 16.)  Accordingly, the ALJ concluded that plaintiff's RFC enabled her to perform work in the national economy existing in significant numbers and, therefore, she was not disabled.  (AR 20-21.)

Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence because the ALJ's explanation that plaintiff's 15 to 20 percent limitation in persistence and pace was accounted for in the RFC determination was erroneous and because the evidence of this limitation, considered together with the vocational expert's testimony, establishes that she is disabled. (Jt. Stip. 3, 6.) The Commissioner counters that it is reasonable to infer that Dr. Malancharuvil's testimony about this limitation was intended only to serve as a rating of whether, at Step Two of the disability evaluation, plaintiff had a severe mental impairment, which is a separate issue from plaintiff's RFC. (Jt. Stip. 8-9.)  In response, plaintiff argues that remand is appropriate for clarification of what Dr. Malancharuvil meant by this limitation. (Jt. Stip. 11.)

The Court agrees with plaintiff that further proceedings for clarification of this issue are appropriate.  The record does not support the ALJ's determination that plaintiff's limitation in persistence and pace is accounted for in the RFC determination.  Rather, the record is ambiguous as to whether Dr. Malancharuvil's

1   opinion regarding plaintiff's reduction in persistence and pace was adequately
2   captured by his testimony regarding plaintiff's work restrictions or was distinct from
3   it.   Accordingly, remand for further proceedings is appropriate.   See Webb v.
4   Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (explaining that a remand is warranted
5   where "the medical evidence was sufficiently ambiguous to trigger the ALJ's duty [to
6   supplement the record]"); see also Gloria v. Astrue, 2009 WL 1763301 at *14 (W.D.
7   Wash. June 19, 2009) (remanding for further proceedings where it was not clear
8   whether specific mental functional limitations should be treated as subsumed within
9   overall RFC determination).

10
11                          **CONCLUSION AND ORDER**
12        The law is well established that the decision whether to remand for further
13   proceedings or simply to award benefits is within the discretion of the Court.   See,
14   e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,
15   888 F.2d 599, 603 (9th Cir. 1989) (as amended); Lewin v. Schweiker, 654 F.2d 631,
16   635 (9th Cir. 1981).   Remand is warranted where additional administrative
17   proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d
18   1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635.   Remand for the payment of
19   benefits is appropriate where no useful purpose would be served by further
20   administrative proceedings, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004);
21   where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425
22   (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits,
23   Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) (per curiam) (as amended).

24        This is not an instance where no useful purpose would be served by further
25   administrative proceedings or where the record has been fully developed.   Rather, this
26   is an instance where additional administrative proceedings could remedy the defects
27   in the ALJ's decision.
28   / / /

1    Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS
2  ORDERED that Judgment be entered reversing the decision of the Commissioner of
3  Social Security and remanding this matter for further administrative proceedings.[4]

4

5  DATED: November 14, 2011

6

7                                    _____
                                      DAVID T. BRISTOW
8                                     UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
        [4]        It is not the Court's intent to limit the scope of the remand.

                                       11